



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT COOKEVILLE

| | | |
|---|---|---|
| **KENNETH RAY, JR.,** | ) | **Docket No 2020-04-0228** |
| Employee, | ) | |
| v. | ) | |
| **ROLLINS, INC.,** | ) | **State File No. 90714-2018** |
| Employer, | ) | |
| And | ) | |
| **NEW HAMPSHIRE INS. CO.,** | ) | **Judge Robert Durham** |
| Carrier, | ) | |
| And | ) | |
| **ABIGAIL HUDGENS, Director, and** | ) | |
| **The Subsequent Injury and** | ) | |
| **Vocational** | ) | |
| **Recovery Fund.** | | |

---

## COMPENSATION HEARING ORDER GRANTING BENEFITS

---

The Court held a Compensation Hearing on June 21, 2021, to determine Mr. Ray's vocational disability following his work-related injury, and, if he is totally disabled, whether the Subsequent Injury and Vocational Recovery Fund (SIF) retains any liability. The Court holds that Mr. Ray is permanently and totally disabled, and Rollins is solely responsible for paying disability benefits.

### History of Claim

The parties agreed that Mr. Ray, as an employee of Rollins, sustained a compensable L4-5 disc herniation while treating a house for termites on November 26, 2018.[1]   He received authorized treatment from neurosurgeon Dr. Jacob Schwarz, who

---

[1] The parties also agreed to the following: Mr. Ray's anatomic impairment rating is twelve percent to the body as a whole; his compensation rate is $602.89; he reached maximum medical improvement  on October 31, 2019; Rollins paid $58,717.54 as an advance against permanent disability benefits; and, Mr. Ray was unable to return to his previous employment with Rollins, which entitles him to benefits beyond his initial compensation period.

ultimately performed an L4-5 discectomy and fusion.

Dr. Schwarz testified that after Mr. Ray reached maximum medical improvement, he still suffered from substantial limitations due to his work injury. Thus, he assigned permanent restrictions based on a functional capacity evaluation.

The functional capacity evaluation stated that Mr. Ray could work at the "Light to Light-Medium" physical demand level and assigned the following physical limitations: (1) maximum occasional lifting/carrying of twenty-five to thirty-five pounds; (2) maximum occasional lifting from floor of thirty pounds; (3) maximum occasional pull activities of sixty-five pounds; (4) occasional bending to approximately fifty-five degrees of lumbar flexion; (5) no stooping more than thirty seconds at a time or for more than ten percent of the work day; (6) no crawling on a repetitive/frequent basis or for more than ten percent of the workday; and (7) alternate "sit/static stand/walk positions" every thirty minutes if needed.

Dr. Schwarz also testified about Mr. Ray's earlier discectomy at L4-5 to repair a herniation that resulted from a previous work injury at Rollins. He understood that Mr. Ray fully recovered from that surgery without symptoms or restrictions and had returned to full duty with Rollins. Dr. Schwarz stated that Mr. Ray's need for the more recent fusion was due to his 2018 injury and not to any instability created by the previous surgery. Further, the earlier injury was not a factor when he assigned Mr. Ray's anatomic impairment and physical restrictions.

Finally, Dr. Schwarz agreed that, based on the job description, Mr. Ray could not return to his previous employment with Rollins due to his physical restrictions.[2]

*Lay Testimony*

Mr. Ray also testified as to his education and job history. He is currently forty-one years old. He quit school after completing the tenth grade but obtained his GED shortly afterward. He has no other formal education other than some training in pest control required by his job at Rollins.

Mr. Ray's first jobs after leaving high school consisted of factory work and working as a dry-wall installer and a plumber's helper. He then spent two years as a press operator before working as a carpenter and interior finisher for a builder for six years. He testified that all these jobs involved moderate to heavy manual labor and required a great deal of physical activity as well as extensive standing and walking.

---

[2] Dr. Schwarz provided this opinion in response to a question regarding Tennessee Code Annotated section 50-6-242(a)(2)(B), which requires the treating doctor to certify on a form that the employee is unable to return to pre-injury employment. Later, he signed the form, but the form did not identify Mr. Ray. Given the circumstances, the Court overruled Rollins's objection to the form's admissibility.

In 2012, Mr. Ray began working for Rollins. As a termite technician, he spent much of his workday crawling through narrow spaces and working in cramped conditions. He had to haul trash from these crawl spaces to his truck and used a heavy drill to drill holes into concrete and wood to inject pesticides into infected spaces. He also worked for hours stooped over to spray chemicals into cracks and crevices.

Mr. Ray testified that he could no longer do any of his former jobs, including his job with Rollins, due to the physical limitations from his back injury. He said he lacks any computer skills and does not own a computer. He has not applied for a job since reaching maximum medical improvement because he does not believe there are any jobs that he can perform on a consistent basis given his limitations.

Although he suffered previous work injuries to his shoulder and low back while at Rollins, he made full recoveries from them. He had no symptoms or physical restrictions from either injury before the 2018 incident.

Regarding his current condition, Mr. Ray testified the fusion provided some relief, but he still suffers from significant low-back and right-knee pain.[3] He is currently under a pain management regimen that is treating him without narcotics. He can do some light housekeeping, such as vacuuming, dishwashing and laundry, so long as he takes frequent breaks during each task. He must lie down several times a day to "stretch out" his back and right leg. He cannot mow his lawn or go boating because of the vibrations. He can only sit for an hour or so while driving before he needs a substantial break to walk and stretch his back. He cannot sit in bleachers to watch his daughter cheerlead or play ball with his young son. Mr. Ray further testified that his pain only allows him to sleep three to four hours a night.

Mr. Ray's wife of twenty-years, Christina Ray, confirmed her husband's testimony about his limitations. She also testified that his physical condition has caused significant stress in their marriage.

*Expert Vocational Testimony*

Mr. Ray and Rollins both brought experts to testify as to the extent of his vocational disability. Mr. Ray proffered Michael Galloway, a certified rehabilitation counselor who has operated a vocational consulting service since 1998. Rollins called Robert Kennon Ph.D., a licensed psychologist and board-certified forensic examiner, who has performed vocational evaluations since 1997.

---

[3] Mr. Ray has complained of debilitating right-knee pain since the injury, but testing has not revealed any abnormalities, and Dr. Schwarz declined to comment on the source of the knee pain.

Mr. Galloway's and Dr. Kennon's findings were quite similar in many ways. Both found Mr. Ray to be very candid and credible with legitimate expressions of pain. They also obtained similar results when testing Mr. Ray's intellectual capacity, finding that he was at "low-average to average" levels in reading and math skills, which were consistent with his age, education, and training. Dr. Kennon additionally gave Mr. Ray an intelligence test, which also placed him in the "low-average" range. They agreed that Mr. Ray's work experience was mostly in jobs in the medium to heavy labor categories. Where they differed was to what extent Mr. Ray's physical limitations, as described in the functional capacity evaluation, prevented him from finding work in the general labor market.

Mr. Galloway believed Mr. Ray to be totally vocationally disabled. First, he did not think Mr. Ray could return to any job that required significant physical activity. Thus, he did not have any transferable job skills based on his prior employment. Second, Mr. Galloway felt that Mr. Ray's inexperience, intellectual capacity, and complete lack of basic computer skills made retraining for jobs within his physical capabilities unlikely. Finally, he observed that the restrictions on stooping and requiring Mr. Galloway to shift from sitting/walking/standing every half hour are restrictions that few employers can effectively accommodate. This is especially true considering Mr. Ray's testimony that he must lie down four or five times a day to "stretch out" his back and leg.

Dr. Kennon agreed with Mr. Galloway that Mr. Ray was substantially disabled, but he did not believe the disability was total. He placed Mr. Ray's vocational disability within a range based on the availability of light- and medium-level jobs. In the light category, he determined that Mr. Ray has lost 87.17% of "highly transferable" job titles and 77.40% of "moderately transferable" jobs. In the medium category, he calculated Mr. Ray's job loss as 68.1% of "highly transferable" jobs and 55.8% of "moderately transferable" jobs.

However, Dr. Kennon conceded that Mr. Ray's restrictions caused some difficulty in determining impairment. First, many of his restrictions fit into a "light-medium" category rather than "medium." Therefore, Mr. Ray's actual disability in the medium category was likely understated. Dr. Kennon had similar difficulty with the restrictions against stooping and crawling more than ten percent of the day, since they were more than "never" but less than "occasional," which is defined as one-third of the workday.

In addition, Dr. Kennon acknowledged the challenge in calculating job loss based on the restriction that Mr. Ray should change from sitting/standing/walking every half-hour. Since Dr. Schwarz did not elaborate how long Mr. Ray could remain in each position, Dr. Kennon categorized Mr. Ray as being able to sit/stand/walk on a "frequent" basis, which is defined as two-thirds of the workday. Dr. Kennon agreed that if this assumption were incorrect, Mr. Ray's vocational impairment would be greater.

4

Dr. Kennon conceded that Mr. Ray would likely need a "sympathetic employer" who was willing to work with his physical restrictions before he could make a successful return to the labor market. Nevertheless, he believed that Mr. Ray was not totally disabled and had the capability to retrain for employment that would accommodate his restrictions through a vocational rehabilitation program or community college.

**Findings of Fact and Conclusions of Law**

Mr. Ray has the burden of proving the essential elements of his workers' compensation claim by a preponderance of the evidence. *Scott v. Integrity Staffing Solutions,* 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). However, in this case, the parties have stipulated to all issues except the extent of Mr. Ray's permanent disability, and if he is permanently and totally disabled, whether the SIF retains any liability.

*Extent of Disability*

Tennessee Code Annotated section 50-6-207(4)(B) provides that employees who suffer an injury that "totally incapacitates [them] from working at an occupation that brings [them] an income" shall be considered totally disabled. In determining whether an employee is totally disabled, the Court must focus on the employee's "ability to return to gainful employment." *Cleek v. Wal-Mart Stores, Inc.*, 19 S.W.3d 770, 774 (Tenn. 2000). In *Hubble v. Dyer Nursing Home,* 188 S.W.3d 525, 535 (Tenn. 2006), the Supreme Court listed several factors relevant to the question of total disability: "the employee's skills, training, education, age, job opportunities in the immediate and surrounding communities, and the availability of work for an individual with that particular disability."

Mr. Ray and Rollins provided vocational experts to testify as to the extent of Mr. Ray's vocational disability. When weighing expert opinions, the Court may consider, among other things, "the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts." *Bass v. The Home Depot U.S.A, Inc.*, 2017 TN Wrk. Comp. App. Bd. LEXIS 36, at *9 (May 26, 2017).

Here, the Court finds that Mr. Galloway and Dr. Kennon are well-qualified to provide an expert opinion, and one does not hold a clear advantage over the other. The Court also notes that their testimony was similar in many ways. Both experts found that, given his education, past job experience, and physical limitations, Mr. Ray had little in the way of transferable job skills. Their intellectual testing revealed Mr. Ray was in the "low-average to average" range in reading and math, which was consistent with his age, education, and job history. However, Dr. Kennon was more confident in Mr. Ray's intellectual capacity, given that he felt Mr. Ray was capable of retraining and would

5

benefit from a vocational rehabilitation program or even community college.

The most significant difference in the expert opinions is their interpretation of the functional capacity evaluation restrictions adopted by Dr. Schwarz, particularly as to changing from walking/standing/sitting every half-hour. Mr. Galloway believed this restriction effectively precluded Mr. Ray from working even sedentary jobs and thus found Mr. Ray to be 100 percent vocationally disabled from the general labor market.

On the other hand, Dr. Kennon found the functional capacity evaluation restrictions to be ambiguous, which made it difficult to classify Mr. Ray's vocational impairment. As a result, Dr. Kennon provided a range of impairment for both "light" and "medium" categories that resulted in a 77.4% to 87.1% disability in "light" jobs and a 55.8% to 68.1% disability in medium jobs. However, he admitted that the disability range was probably higher given Mr. Ray's actual restrictions. Dr. Kennon conceded that any employment Mr. Ray finds must be with an employer "sympathetic" to his limitations and willing to provide accommodations.

In addition to expert opinion, the "employee's own assessment of his or her overall physical condition, including the ability or inability to return to gainful employment, is competent testimony that must be considered" when determining vocational disability. *Hubble*, 188 S.W.3d at 535-36. Dr. Schwarz, Mr. Galloway, and Dr. Kennon all considered Mr. Ray to be truthful with no evidence of malingering. All believed him to be in genuine pain. Upon observing Mr. Ray at the hearing, the Court agrees with this undisputed testimony. Mr. Ray frequently alternated between sitting and standing during the hearing, and the Court observed that when he did sit, he braced himself with his elbows on his chair arms to take as much weight off his back as possible.

Mr. Ray testified that he is in constant pain in his back to his right knee with activity aggravating his symptoms to the point of debilitation. He sleeps three to four hours a night due to his pain. He can only engage in limited activity that requires frequent breaks that are at least several minutes in length.

He testified that even on "good days," he must lie down several times a day to get some relief. Mr. Galloway and Dr. Kennon both said that they did not consider this limitation because it was not part of the functional capacity evaluation, but they agreed that this would limit the jobs available to him even more.

Mr. Ray admitted that he has not applied for work since his injury because he does not believe there are any jobs that he can do in his current condition. Given the evidence, the Court agrees with this assessment, as Mr. Ray's testimony supports Mr. Galloway's interpretation of the functional capacity evaluation. Thus, the Court holds that Mr. Ray is permanently and totally disabled from gainful employment under Tennessee Code Annotated section 50-6-207(4)(B).

6

The Court now considers whether the SIF retains any liability for Mr. Ray's permanent total disability benefits. Tennessee Code Annotated § 50-6-208(a)(1) provides:

> If an employee has previously sustained a permanent physical disability from any cause or origin and becomes permanently and totally disabled through a subsequent injury, the employee shall be entitled to compensation from the employee's employer only for the disability that would have resulted from the subsequent injury …. The remainder of the compensation that would be due for the permanent total disability [shall be paid] out of the …. subsequent injury and vocational recovery fund.

Subsection (a)(2) goes on to say that for an employee to receive SIF funds, the employer must show that it had actual knowledge of the employee's pre-existing disability at the time he was hired or retained in employment. It is undisputed that Mr. Ray sustained a previous work-related shoulder injury and a previous work-related disc herniation at L4-5 while employed with Rollins. Thus, Rollins was aware of those injuries when it hired Mr. Ray.

However, no evidence showed that Mr. Ray was in any way disabled by those injuries. He testified that he made a full recovery with no limitations on his activities from both injuries. Rollins did not provide any evidence to the contrary. Dr. Schwarz testified unequivocally that, even though the herniation he treated was at the same level as the previous herniation, his impairment rating and permanent restrictions were due solely to the 2018 herniation. Rollins did not offer any evidence to counter this opinion.

The Court finds no evidence that Mr. Ray suffered a "permanent physical disability" due to his previous work-related injuries. Thus, the SIF retains no liability for Mr. Ray's permanent and total disability benefits.

*Commutation to Lump Sum*

Tennessee Code Annotated section 50-6-207(4)(A)(ii)(a) provides that permanent total disability benefits "may be commuted to a lump sum to pay only the employee's attorney's fees and litigation expenses and to pay pre-injury obligations in arrears." Even then, the "commuted portion of an award shall not exceed the value of one hundred (100) weeks of the employee's benefits." *Id.* at (ii)(b).

Here, the Court finds it appropriate to commute 100 weeks of the award to pay Mr. Ray's attorney's fees and litigation expenses. Tennessee Code Annotated section 50-

6-229(a) allows commutation of attorney fees if "approved and ordered by the trial judge." Thus, the Court commutes 100 weeks of the award and orders Rollins to pay it in a lump sum of $60,289.00 (100 weeks times $602.89).

The remaining amount of the award shall be paid periodically. To determine the amount of weekly benefits Mr. Ray shall receive from Rollins, the Court must first deduct the lump sum payment from the total amount Mr. Ray would receive if benefits are paid until he becomes eligible for full social security retirement benefits. After dividing this amount by the number of weeks Mr. Ray is entitled to permanent total disability benefits, the Court holds that Rollins shall pay Mr. Ray permanent total disability benefits in the amount of $562.19 per week as long as he is eligible.

*Attorney's fees*

As to the amount of Ms. Draughon's attorney's fee, Tennessee Code Annotated section 50-6-207(4)(a)(iii) provides that fees in permanent total disability cases "shall be calculated upon the first four hundred and fifty (450) weeks of disability only." Further, under section 226(a)(1), any attorney fee shall not exceed twenty percent of the award.

Ms. Draughon's application for attorney's fees in the amount of $54,260.10, or 20% of the first 450 weeks of permanent total disability benefits, is uncontested and supported by her affidavit as required by Tennessee Code Annotated section 50-6-226(a)(2)(C). The Court find this award is justified according to the criteria in Tennessee Supreme Court Rule 8, RPC 1.5. Thus, the Court awards Ms. Draughon attorney's fees in the amount of $54,260.10 to be paid from the commutation of Mr. Ray's award. The remaining amount may be used to pay Mr. Ray's litigation expenses.

*Discretionary Costs*

As for discretionary costs, Tennessee Code Annotated section 50-6-239(c)(8) gives the Court discretion to award costs "including reasonable fees for depositions of medical experts" against the employer "upon adjudication of the claim as compensable." Rollins argues that discretionary costs should not be awarded in this case because it stipulated to compensability, but it did not cite any authority for this position. The Court interprets the statute to mean the claim must be compensable, not that compensability must be disputed, before it may award costs. Thus, the Court holds that awarding discretionary costs to Mr. Ray is appropriate in this case.

In addition to section 50-6-239(c)(8), Tennessee Rules of Civil Procedure Rule 54.04 further defines allowable "discretionary costs" as follows:

> [R]easonable and necessary court reporter expenses for depositions or trials, reasonable and necessary expert witness fees for depositions (or

stipulated reports) and for trials, reasonable and necessary interpreter fees not paid pursuant to Tennessee Supreme Court Rule 42, and guardian ad litem fees; travel expenses are not allowable discretionary costs.

Mr. Ray asked for reimbursement of several different expenses:

1) Mr. Galloway's vocational evaluation and deposition and trial preparation;
2) Mr. Galloway's fees for testifying in his discovery deposition and at trial; and,
3) Court reporter fees for witness depositions and the trial.

The Court will address each in turn.

In *Garassino v. W. Express, Inc.*, No. M2016-02431-SC-R3-WC, 2018 Tenn. LEXIS 60, at *7-8 (Tenn. Workers' Comp. Panel Feb. 8, 2018), the Panel held that the costs "for expert witness fees for preparing for depositions or trial, no matter how reasonable these fees are," are not recoverable discretionary costs in Rule 54.04(2) of the Tennessee Rules of Civil Procedure. Thus, the Court denies Mr. Ray's request for reimbursement of Mr. Galloway's vocational evaluation as well as any costs associated with his preparation for deposition or trial.

As for Mr. Galloway's travel expenses, the plain language of Rule 54.04 states that travel expenses are not allowable discretionary costs. Thus, Mr. Ray is not entitled to reimbursement for Mr. Galloway's travel expenses.

Regarding Mr. Galloway's fees for deposition and trial testimony, the Court relied upon his testimony to make its ruling. The Court further finds that Mr. Galloway's charges for his testimony comports with Tennessee Compilation Rules and Regulations 0800-02-21-.18(4) (August, 2019). regarding charges for medical depositions. Thus, the Court holds that $1,950.00 is a reasonable cost for Mr. Galloway's testimony, and Rollins shall reimburse Mr. Ray in that amount.

Finally, Rollins did not object to the amount of Mr. Ray's court reporter expenses. Thus, Rollins shall also pay Mr. Ray $630.10 as reimbursement for court reporter expenses.

Given the regulations and statutes cited above, and based on the circumstances of this case, the Court holds that reimbursement of Mr. Ray's costs in the amount of $2,580.10 is reasonable, and Rollins shall pay this amount to Mr. Ray. The Court further awards Ms. Draughon attorney's fees of $54,260.10, or twenty percent of Mr. Ray's award for permanent total disability benefits.

IT IS, THEREFORE, ORDERED THAT:

1. Mr. Ray is entitled to an award of permanent and total disability benefits. Rollins shall pay accrued benefits in a lump sum from October 31, 2019, the date of maximum medical improvement, through the date this order becomes final, less a credit of $58,717.54 already paid as an advance against permanent disability benefits. Rollins shall also pay a lump-sum payment of $60,289.00, from which Ms. Draughon shall receive $54,260.10 in attorney's fees with the remainder to pay litigation expenses. The remaining award shall be paid at the weekly rate of $562.19 so long as Mr. Ray is eligible for permanent and total disability benefits.

2. The Subsequent Injury and Vocational Recovery Fund retains no liability for permanent total disability benefits to Mr. Ray.

3. Rollins shall pay $2,580.10 to Mr. Ray as reimbursement for his litigation expenses.

4. Dr. Jacob Schwarz shall remain Mr. Ray's treating physician for his work-related back injury. Rollins shall pay for reasonable, necessary, and related medical treatment for this injury.

5. Rollins shall pay costs of $150.00 to the Court Clerk within five business days of this order becoming final.

6. Rollins shall file with the Court Clerk a Statistical Data Form within ten business days of this order becoming final.

7. This Compensation Order is a final adjudication upon the merits of Mr. Ray's claim for benefits. Unless appealed, it shall become final in thirty days.

**ENTERED on July 21, 2021.**

**ROBERT DURHAM, JUDGE**
**Court of Workers' Compensation Claims**

**APPENDIX**

Technical Record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Amended Scheduling Order
4. Notice of Compensation Hearing

5. Mr. Ray's Exhibit and Witness List
6. Rollins' Exhibit and Witness List
7. Rollins' Pre-Compensation Hearing Statement
8. Mr. Ray's Pre-Compensation Hearing Statement
9. SIF's Pre-Compensation Hearing Statement

Exhibits:
1. Mr. Ray's Submission of Evidence
2. Satellite Med's Medical Records
3. Rollins' Submission of Medical Records
4. Mr. Galloway's Vocational Assessment
5. Pain Management Group's Medical Records
6. Mr. Galloway's Curriculum Vitae
7. Dr. Kennon's Vocational Assessment

## CERTIFICATE OF SERVICE

I certify that a copy of the Order was sent as indicated on July 21, 2021.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Jill Draughon | | | X | JDraughon@hughesandcoleman.com |
| Charles Pierce | | | X | cepierce@mijs.com |
| Patrick Ruth | | | X | Patrick.Ruth@tn.gov |

_____
**PENNY SHRUM, Court Clerk**
WC.CourtClerk@tn.gov

11



# NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties
**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*